O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUDWAY ENTERPRISES, INC., a California Corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>FEDERAL INSURANCE COMPANY, a New Jersey Corporation; CHUBB NATIONAL INSURANCE COMPANY, an Indiana Corporation, doing business as CHUBB GROUP OF INSURANCE COMPANIES; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. EDCV 09-448-VAP (OPx)<br><br>**[Motion filed on March 9, 2009]**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

    Defendants Federal Insurance Company and Chubb National Insurance Company's Motion to Dismiss came before the Court for hearing on April 6, 2009.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the

arguments advanced by counsel at the hearing, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I. BACKGROUND

**A.   Factual Allegations**

On or about June 5, 2007, Plaintiff Budway Enterprises, Inc. ("Plaintiff") purchased a written policy of motor truck cargo insurance, bearing number 0662-66-34 LAO ("the policy") from Defendants Federal Insurance Company and Chubb National Insurance Company ("Defendants").  (See Compl. at ¶ 7.)  The policy covered all damages Plaintiff would become legally obligated to pay to "a common carrier truckman, a contract truckman, or other truckman for hire because of the direct physical loss or damage to freight being transported by Plaintiff."  (Id.)  Under the policy, Defendants agreed to pay or indemnify Plaintiff up to the sum of $100,000 per occurrence and up to $25,2000 for loss of earned freight charges.  (Id.)  The policy was effective from June 1, 1007 through June 1, 2008.  (Id. at ¶ 8.)

On or about December 21, 2007, Plaintiff's shipper and customer ALCOA tendered two shipments, with separate Bills of Lading and separate delivery numbers, of aluminum products to Plaintiff for transportation.  (Id. at ¶¶ 9, 10.)  Plaintiff loaded the shipments into two separate trailers, attached to and pulled by two separate

1 tractors. (Id. at ¶¶ 11, 12.) On or about December 26,
2 2007, the tractors and trailers filled with ALCOA's
3 aluminum shipments were stolen from the freight yard by
4 persons unknown. Police later located the tractors and
5 trailers, but not the aluminum cargo. (Id. at ¶ 13.)

7     ALCOA submitted to Plaintiff a "written Loss and
8 Damage Claim" for each shipment, totaling $150,679.43.
9 (Id. at ¶¶ 14, 15.) Plaintiff provided timely notice to
10 Defendants of its request to "pay the cargo loss and
11 damage claims against [P]laintiff" for the loss to ALCOA,
12 but Defendants have refused to pay Plaintiff, contending
13 there was only one occurrence of theft, thereby
14 triggering the $100,000 per occurrence policy limit.
15 (Id. at ¶ 17.)

17 **B.   Procedural History**
18     Plaintiff filed a Complaint in the California
19 Superior Court against Defendants on January 27, 2009.
20 The Complaint contained the following claims against both
21 Defendants: (1) Breach of Contract; and (2) Breach of the
22 Implied Covenant of Good Faith and Fair Dealing. In
23 addition, Plaintiff also seeks punitive damages and
24 attorneys' fees. Defendants removed the action to this
25 Court on the basis of diversity jurisdiction, 28 U.S.C. §
26 1332.

On March 9, 2009, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a Request for Judicial Notice,[1] the Declaration of Neil S. Lerner ("Lerner Declaration"), and the Declaration of Jolene R. Rice ("Rice Declaration").[2]  On March 20, 2009, Plaintiff filed Opposition and the Declaration of John F. Oakes ("Oakes Declaration").[3]  On March 30, 2009, Defendants

---

[1] The Court grants Defendants' Request for Judicial Notice of the inland marine insurance policy underwritten by Defendants, attached as Exhibit C to the Lerner Declaration. See Fed. R. Evid. 201. In any event, Plaintiff does not object to the document.

[2] Defendants failed to attach the proper backing to their Moving papers, in violation of Local Rule 11-3.5. Also, Defendants failed to separate the exhibits attached to the Lerner Declaration with tabs, in violation of Local Rule 11-5.

[3] Plaintiff has violated the Court's Standing Order, requiring the parties to provide the Westlaw citation, where available, instead of the Lexis citation. (See Standing Order ¶ 4.)  Plaintiff also violated Local Rule 11-3.1.1 by failing to use the proper typeface. Plaintiff also failed to provide the Court with pinpoint citations in many of its citations to cases.

Next, the parties attach evidence as exhibits for which they do not seek judicial notice and which were not attached to the Complaint. The scope of review on a Rule 12(b)(6) Motion is limited to the four corners of the Complaint and to documents of which the Court takes judicial notice. See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The Court declines to convert this Motion into one seeking summary judgment; thus it does not consider this evidence, except for that of which it takes judicial notice.

filed a Reply and "Objections to Extrinsic Evidence Proffered by Plaintiff" ("Objections").[4]

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007).  In addition, the Court must accept all material allegations in the complaint - as well as any reasonable inferences to be drawn from them - as true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

---

[4] The Court does not rule on Defendant's Objections because the Court has already concluded it will not consider the evidence attached by Plaintiff that did not accompany the original Complaint and for which the Court has not taken judicial notice.

5

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic</u>, 127 S. Ct. at 1964-65 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id</u>. at 1965.

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," <u>Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

### III. DISCUSSION

Defendants move the Court to dismiss both of Plaintiff's claims and its request for punitive damages and attorneys' fees.

**A.   Breach of Contract**

Plaintiff alleges Defendants breached their contract by refusing to pay Plaintiff the full value of the theft of ALCOA's cargo, totaling $150,679.43. (<u>See</u> Compl. at ¶¶ 6-19.) Defendants argue Plaintiff's allegation fails to state a claim because Defendants did not breach the

1 contract, as there was only one "occurrence" of theft.
2 (See Mot.)

### 1. Ambiguity

Plaintiff alleges the term "occurrence" is not defined in the contract, is ambiguous, and must be construed in favor of Plaintiff by finding coverage for the theft of both aluminum shipments in this case. (See Opp'n at 4-6.)

If a term in an insurance contract is ambiguous, the Court must examine the language in the light of the insured's objectively reasonable expectations. See Jordan v. Allstate Ins Co., 116 Cal. App. 4th 1206, 1213-14 (2004). An insurance contract term is ambiguous if it "is capable of two or more reasonable constructions." United Nat. Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772, 777 (2009) (citations and internal quotations omitted). Where a policy is unambiguous, however, the Court does not look beyond the four corners of the insurance contract. Vons Companies v. Fed'l Ins. Co., 212 F.3d 489 (9th Cir. 2000).

Here, Plaintiff specifically argues the term is ambiguous because it is not defined in the contract and that its expectation at the time of contracting was that "occurrence" meant "shipment," whereby each shipment

7

would be insured up to $100,000. (Opp'n at 5.) The latter point is made only in the Opposition papers, whereas the former point is alleged in the Complaint; the Court limits its analysis to the allegations made in the Complaint. (<u>See</u> Compl. at ¶ 23.) Taking all the allegations in the Complaint as true, Plaintiff fails to state a claim that the term is ambiguous because the basis for the allegation rests solely on the lack of a definition of the term in the contract. <u>See</u> <u>Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.</u>, 5 Cal. 4th 854, 866 (1993).

### 2. Scope of Coverage

Plaintiff alleges each theft of the two aluminum shipments are covered under its policy with Defendants. (<u>See</u> Opp'n at 5-6.) To the contrary, Defendants argue the policy covers the thefts as one "occurrence," but only up to $100,000 policy limit per occurrence, not the full amount claimed by Plaintiff. (<u>See</u> Mot. at 5-6.)

Defendants argue California law dictates that "occurrence," when used in an insurance contract to limit liability, means "cause." (Reply at 2 (citing <u>Whittaker</u>, 11 Cal. App. 4th at 1242).) In <u>Whittaker</u>, 11 Cal. App. 4th at 1242, the California Court of Appeal, distinguishing between the number of covered occurrences and whether an occurrence was covered based on its

1  timing, made the following pronouncement: "[O]ccurrence
2  has generally been held to mean the underlying cause of
3  the injury, rather than the injury or claim itself;
4  otherwise, the insurer's effort to limit its liability
5  per occurrence would be substantially weakened."  This
6  "cause standard" applies when determining the number of
7  occurrences covered by an applicable insurance policy.
8  Id. at 1243 (quoting Michigan Chemical Corp. v. American
9  Home Assur. Co., 728 F.2d 374, 379 (6th Cir. 1984)).
10 Later cases have also applied the "cause standard" in
11 this context.  See, e.g., Eott Energy Corp. v. Storebrand
12 Int'l Ins. ("Eott"), 45 Cal. App. 4th 565, 575-77 (1996)
13 (applying cause standard, found 653 thefts committed as
14 part of organized and systematic scheme to steal diesel
15 fuel constituted one occurrence); B.H.D., Inc. v. Nippon
16 Ins. Co. of Europe, LTD ("B.H.D."), 46 Cal. App. 4th
17 1137, 1141-43 (1996) (applying cause standard, found
18 theft of $117,280 in jewelry from store over period of
19 three months by one person constituted multiple
20 occurrences); Lexington Ins. Co. v. Travelers Indem. Co.
21 of Illinois ("Lexington"), 2001 WL 1132677, at *3-4 (9th
22 Cir. 2001) (unpublished) (applying cause standard, found
23 four separate fires in four separate buildings at four
24 separate locations constituted four occurrences).  The
25 Court adopts the "cause standard" in evaluating
26 Plaintiff's claim for breach of contract.
27
28

1    Here, Plaintiff fails to allege facts that show there
2 were at least two separate causes of the theft to support
3 its claim that Defendants breached the insurance
4 contract.  Plaintiff alleges unknown thiefs stole the
5 shipments on or about the same day from a locked freight
6 yard; it is unknown whether the thefts occurred "at the
7 same time, or at different times."  (Compl. at ¶ 13.)
8 Plaintiff fails to allege any particular facts relating
9 to the cause of its injury, but insists it is entitled to
10 recover for the theft of both shipments because there
11 were "two separate shipments, with two separate bills of
12 lading, two separate shipment manifests, loaded in two
13 separate trailers pulled by two separate trucks, and that
14 ALCOA presented two separate claims [to Plaintiff] which
15 it billed on two separate invoices."  (Compl. at ¶ 17.)

17    Defendants rely on Eott, 45 Cal. App. 4th at 575-77,
18 for the proposition that multiple related acts, resulting
19 from the same cause, may constitute one occurrence.  (See
20 Mot. at 5; Reply at 3.)  There, the Court, reversing the
21 trial court's entry of summary judgment in favor of the
22 defendant insurer, found over six hundred thefts of
23 diesel fuel constituted one occurrence.  Eott, 45 Cal.
24 App. 4th at 575-77.  The Court focused on the language of
25 the contract, which defined "occurrence" to include "a
26 continuous or repeated exposure to conditions;" thus, the
27 term "reasonably contemplate[d] that multiple claims

could, in at least some circumstances, be treated as a single occurrence or loss." Id. at 575. The Court also relied on several cases that held "a series of related acts, attributable to a single cause, may be treated as having been caused by one occurrence." Id. Accordingly, based on the language in the contract and precedent, the Court found one occurrence because "there was a systematic and organized scheme to steal" that proximately caused the injury. Id.

Here, although the Court is not guided by a definition of "occurrence" within the insurance contract as in Eott, the provision in the governing contract does contemplate multiple claims submitted by multiple parties that would constitute one occurrence. (See Rice Decl., Ex. C at 5 ("The applicable Limit of Insurance for Motor Truck Cargo Legal Liability shown in the Declarations [$100,000] is the most we will pay in any one occurrence regardless of the number of: insureds; claims made or suits brought; or persons or organizations making claims or bringing suits.").) Thus, applying Eott, this contract provision could cover multiple claims by multiple parties but only constituting one occurrence, triggering the $100,000 policy limit.

11

As to the second ground for the Eott Court's decision, that case, unlike this one, was before the trial court on a summary judgment motion.  Here, by contrast, the Court cannot determine, based on the factual allegations in Plaintiff's Complaint, whether or not the theft of the aluminum shipments constituted "a series of related acts, attributable to a single cause."[5] The question, thus, is whether the Complaint sufficiently alleges more than one occurrence.  Nonetheless, Eott applies here to illustrate the contract provision at issue in this case may support a determination that multiple claims by multiple parties may constitute only one occurrence for purposes of coverage under the insurance policy.  Thus, under Eott, Plaintiff fails to state a claim that Defendants have breached the insurance contract.

Next, Defendants rely on B.H.D., 46 Cal. App. 4th at 1141-43, for the proposition that theft of several items on one occasion constitutes only one occurrence.  (See Mot. at 5; Reply at 4-5.)  There, the Court, affirming the trial court's entry of summary judgment in favor of the defendant insurer, found multiple thefts of jewelry

---

[5] Plaintiff's attempts to distinguish Eott are not persuasive.  Plaintiff relies exclusively on the fact that Eott has been distinguished by B.H.D. and Lexington.  Those cases distinguished Eott because the contract provisions at issue in those cases required such distinction.

12

1  committed by one person over a period of three months
2  constituted multiple occurrences; this is contrary to
3  Defendants' contention.  B.H.D., 46 Cal. App. 4th at
4  1141-43.  As in Eott, the Court relied on the specific
5  language in the contract: "each claim for loss or damages
6  (separately occurring) ... shall be adjusted separately
7  ...."  Based on the inclusion of the words "separately
8  occurring," the Court found the following:

> "In context, it can only mean that the deductible
> applied to each "separately occurring" loss.  While
> the noun form of "occurring," that is "occurrence,"
> is not specifically defined in the policy, its plain
> reference is to each separate covered loss.  If a
> thief takes several items on a single occasion, there
> is one occurrence.  If a thief commits larceny on
> each of several successive days, there are many
> occurrences....  The result is that the deductible
> applies to each theft that occurs on a separate
> occasion."

Id. at 1142.  Accordingly, the Court found each theft committed during the three month period was a separate occurrence.  Id.

Thus, this case does not support Defendants' argument; furthermore, there is no such "separately occurring" language in the contract between the parties in this case.  In fact, as discussed above, the contract

provision contemplates multiple claims brought by multiple parties may constitute one occurrence nonetheless. (See Rice Decl., Ex. C at 5.) The contract provision here is distinguishable from the provision at issue in B.H.D. and more similar to the definition of "occurrence" given in Eott. Plaintiff argues Defendants selectively quoted dicta from the B.H.D. opinion; in any event, the Court finds B.H.D. does not apply to this case, as it is distinguishable factually.

Plaintiff relies on Lexington, 2001 WL 1132677, at *3-4, for the proposition that a systematic and organized scheme should be construed as multiple occurrences. There, the Court, affirming the district court's order granting summary judgment to the indemnity defendants, found four separate fires in four different locations constituted four occurrences. Lexington, 2001 WL 1132677, at *3-4. The Court discussed both Eott and B.H.D. Id. at *3. The Court noted the deductible provision was identical to that in Eott, but contained additional language that allowed the aggregation of losses as one occurrence in two situations, neither of which were present in the case before the Lexington Court. Id. at *4. Accordingly, the Court found, as arson was not described as one of the situations where multiple acts could be aggregated as one occurrence, that each act of arson constituted its own occurrence.

1    Lexington is distinguishable.  Here, there is no
2    language in the insurance contract that describes
3    specific circumstances whereby the insurer may aggregate
4    losses as one occurrence in certain circumstances.  Thus,
5    the rationale behind the Lexington Court's decision does
6    not apply here.  Moreover, no facts appear in the
7    Complaint that a "systematic and organized scheme" lay
8    behind the two thefts.
9
10        Finally, Plaintiff relies on Basler Turbo
11   Conversions, LLC, v. HCC Insurance Company ("Basler
12   Turbo"), 2009 WL 585658 (E.D. Wis.) to support its
13   multiple occurrences argument.  There, the Court, denying
14   the insured plaintiff's motion for a declaratory
15   judgment, found a series of thefts of airplane parts
16   constituted multiple occurrences.  Basler Turbo, 2009 WL
17   585658 at *7 ("The actions by which he caused each theft
18   were separated by time, some by weeks and even months,
19   and interrupted by periods of sleep, meals and countless
20   other activities of daily living.  To consider them all
21   as one occurrence would stretch the meaning of the term
22   far beyond the ordinary use.").  This opinion, authored
23   by the District Court of the Eastern District of
24   Wisconsin, is not binding on this Court and is based
25   almost entirely on Wisconsin law, although it does also
26   discuss Eott and B.H.D. in part.  The Court declines to
27   follow its reasoning.
28

Applying the applicable and binding precedent discussed above, the Court finds Plaintiff's allegations of Defendants' breach of contract fail to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The Complaint lacks factual allegations to show multiple occurrences caused Plaintiff's injury; Plaintiff's failure to plead those facts renders it unable to state a claim that Defendants breached their insurance contract. Accordingly, the Court GRANTS Defendants' Motion as to Plaintiff's first claim, with leave to amend.

**B.   Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff alleges Defendants breached the implied covenant of good faith and fair dealing by their bad faith refusal to pay Plaintiff's claims in full without a reasonable investigation into the claims. (See Compl. at ¶¶ 20-25.) Defendants argue there was, and continues to be, a genuine dispute between the parties as to coverage under the policy; thus, Defendants argue, they have not denied payment in bad faith. (See Mot. at 6-7.)

The implied covenant of good faith and fair dealing arises between the parties to a contract. See Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 478 (1989); Rest. 2d Contracts § 205 ("Every contract imposes upon each

1  party a duty of good faith and fair dealing in its
2  performance and its enforcement.").  An insurer must
3  investigate thoroughly a claim by an insured before
4  denying the claim in good faith; if an insurer denies a
5  claim it has not investigated reasonably, then the
6  insurer is subject to tort liability.  See Egan v. Mutual
7  of Omaha Ins. Co., 24 Cal. 3d 809, 818-19 (1979); Jordan
8  v. Allstate Ins. Co., 148 Cal. App. 4th 1062, 1071-72
9  (2007); McCoy v. Progressive West Ins. Co., 171 Cal. App.
10 4th 785, 792-93 (2009); Caso v. Hartford Casualty Ins.
11 Co., 2008 WL 1970024, at *5-6 (E.D. Cal. 2008).  "Where
12 there is a genuine issue as to the insurer's liability
13 under the policy for the claim asserted by the insured,
14 there can be no bad faith liability imposed on the
15 insurer for advancing its side of that dispute."  Jordan
16 v. Allstate Ins. Co., 148 Cal. App. 4th at 1072.

18     Here, Plaintiff alleges Defendants did not conduct an
19 investigation into its claim and, in bad faith, refused
20 to pay Plaintiff's claim under Defendants' theory that
21 the limit of $100,000 applied as there was only one
22 occurrence.  Taking the allegations in the Complaint as
23 true for the purposes of this Motion, Plaintiff clearly
24 states a claim for the breach of the implied covenant of
25 good faith and fair dealing.  Id. at 1072.  Defendants
26 may raise their genuine issue defense before the Court at
27 a later stage of this litigation; at this juncture, the

17

genuine issue doctrine does not bar Plaintiff's allegation.

Plaintiff's claim includes a prayer for punitive damages. (See Compl. at ¶ 25 ("The acts of defendants ... were done intentionally, in bad faith, maliciously, and with the intent to defraud plaintiff, in conscious disregard of plaintiff's rights.").) In California, punitive damages are only available against defendants "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Malice" means conduct intended to injure or "which is carried on by the defendant with a conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c). "'Oppression means subjecting a person to cruel or unjust hardship in conscious disregard of that person's rights." Id. "There must be an intent to vex, annoy, or injure. Mere spite or ill will is not sufficient; and mere negligence, even gross negligence is not sufficient to justify an award of punitive damages." Ebaugh v. Rabkin, 22 Cal. App. 3d 891, 894 (1972). Plaintiff's claim for violation of the implied covenant of good faith and fair dealing supports its prayer for punitive damages by alleging Defendants denied its claim in bad faith and with oppression, fraud, or malice. See San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co., 723 F.2d 700, 705 (1984). Accordingly, the Court

DENIES Defendants' Motion as to Plaintiff's second claim and prayer for punitive damages.

## C.  Attorneys' Fees

Plaintiff seeks attorneys' fees on both of its claims "pursuant to Civil Code § 1717.5 and/or Code of Civil Procedure Section 1033.5, subdivision (a), subsection (10)(A)."  (See Compl. at 6.)  Defendants argue Plaintiffs are not entitled to recover reasonable attorneys' fees under the statutes Plaintiff cites in its Complaint.  While Defendants are correct and Plaintiffs concede this, Plaintiff is entitled to seek "attorneys' fees reasonably incurred to compel payment of insurance policy benefits ... if [Plaintiff] proves breach of the covenant of good faith and fair dealing."  McGregor v. Paul Revere Life Ins. Co., 369 F.3d 1099, 1100-01 (9th Cir. 2004) (citing Brandt v. Superior Court, 37 Cal.3d 813 (1985).  Accordingly, the Court grants Plaintiff leave to amend its prayer for damages to remove the inapplicable statutory citations.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion in part and DENIES it in part. Plaintiff must file an amended Complaint no later than May 18, 2009.

Dated: April 14, 2009

VIRGINIA A. PHILLIPS
United States District Judge

20